582 A.2d 1231

**Paul HARRISON et al.**

v.

**JOHN F. PILLI & SONS, INC.**

**No. 43, Sept. Term, 1989.**

Court of Appeals of Maryland.

Dec. 21, 1990.

Anthony P. Palaigos (Blum, Yumkas, Mailman, Gutman, & Denick, P.A., on brief), Baltimore, for petitioner.

John S. Simcox (Steven J. Parrott, Hartman and Crain, on brief), Annapolis, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS *, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland, retired, Specially Assigned, JJ.

McAULIFFE, Judge.

In 1985, John F. Pilli & Sons, Inc. (seller) entered into contracts with petitioners for the sale of homes in the Fair Oaks subdivision in Anne Arundel County. Each of the six contracts involved in this case specified a particular lot and a particular home to be built by the seller on that lot, and required conveyance of the improved property within a specified time.

At the time the contracts were signed, § 14–118 of the Real Property Article of the Maryland Code (1974, 1988 Repl.Vol.) provided, in pertinent part, as follows: [1]

(a) A contract of sale of improved, residential real property shall disclose to the initial purchaser the estimated cost, as established by the appropriate water and sewer authority, of any deferred water and sewer charges for which the purchaser may become liable....

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. The disclosure provisions of § 14–118 were transferred to § 14–117 of the Real Property Article by chapter 756 of the Acts of 1989.

(b) Violation of this section entitles the initial purchaser to recover from the seller two times the amount of deferred charges he is required to pay.

None of petitioners' contracts disclosed the existence or amount of any deferred water or sewer facilities charges.[2] Indeed, one cannot determine from the printed form contract used in each instance whether the property was subject to deferred water or sewer charges of any kind. Each contract provided for adjustment at settlement of any such charges if they did exist, but also provided that "[t]he septic system and well, if any, are being installed under the direction of the county health officer...."

At settlement, or soon thereafter, petitioners learned that their lots were subject to a lien for the payment of deferred water and sewer charges. Each lot owner was obliged to pay annual charges of $240 for water facilities charges, and a like amount for sewer facilities. The deferred charges, which began in 1984, will continue until 2017.

In October of 1986, petitioners sued the seller in the Circuit Court for Anne Arundel County, seeking judgment for twice the amount of the deferred water and sewer charges, computed over the entire 31 year period of payments due subsequent to settlement. The seller denied liability, and each party moved for summary judgment. Judge Eugene M. Lerner granted petitioners' motion, finding that the seller was liable to each property owner for twice the amount of the deferred water and sewer facilities charges that had accrued at the time of the hearing.

Each party appealed to the Court of Special Appeals. The seller contended, among other things, that: 1) the contracts at issue were not for the "sale of improved,

---

**2.** A deferred water or sewer facilities charge represents the cost of installation of a water or sewer system, or a part thereof, that is fairly allocated to a particular piece of property served by the system, the payment of which is deferred in favor of annual payments over a stated number of years. Ordinarily, a lien for the deferred charges is imposed on the property. *See, e.g.,* Maryland Code (1982, 1987 Repl.Vol.) § 9–949 of the Environment Article.

residential real property" within the meaning of the statute, because the lots were not improved at the time the contracts were signed; 2) the purchasers waived any right they may have had under the statute when they learned, at settlement, of the lien for deferred charges, and failed to object; 3) there was no evidence that Belleview Sewer and Water, Inc., the entity imposing the deferred charges, was an "appropriate water and sewer authority" within the meaning of the statute; and 4) in any event, damages should have been limited to twice the amount actually paid, rather than twice the amount of payments accrued.

The purchasers contended they were entitled to judgment for twice the amount of the entire deferred charges, without regard to the amount that had accrued or been paid. The Court of Special Appeals reversed the judgment of the circuit court, holding that the contracts were not for the "sale of improved, residential real property," and therefore the disclosure statute did not apply. *Harrison v. John F. Pilli & Sons*, 78 Md.App. 199, 204, 552 A.2d 971 (1989). The purchasers sought certiorari on the issue decided by the Court of Special Appeals. The seller filed a conditional cross-petition for certiorari, asking that in the event we agreed with the purchasers, we address the remaining questions the seller raised in the intermediate appellate court. We granted both petitions.

## I.

We first address the applicability of the disclosure statute to the contracts involved in this case. As previously noted, § 14–118 of the Real Property Article required disclosure, in any "contract of sale of improved, residential real property," of any deferred water and sewer charges for which the initial purchaser might become liable. We conclude that under the clear language of the statute, these contracts are covered by the statute. In each instance, the purchaser agreed to buy and the seller agreed to sell a piece of property with a single-family residential dwelling on it. The purchase price in each instance was for the lot im-

proved by the home. The subject matter of each contract of sale was, therefore, "improved, residential real property."

It is of no consequence that the lots were unimproved at the time the contracts were signed. The contracts required the seller to make the improvements in order to convey that which it had agreed to sell. The sale of "custom" homes forms a substantial part of the residential real estate market, and is every bit as much a "sale of improved, residential real property" as is the sale of a "speculation" home, *i.e.*, one completed by the seller before being offered for sale.

In reaching a contrary result, the Court of Special Appeals was persuaded by two factors. First, that Court held that the statute must be strictly construed because it is in contravention of common law. 78 Md.App. at 203, 552 A.2d 971. The canon of construction relied on by the Court of Special Appeals may have efficacy in appropriate cases. It must be recognized, however, that most statutes have the effect of changing existing law, and therefore the canon "has been most commonly employed where the statute threatens to invade an existing property or contract right, or tends to interfere substantially with a cherished personal liberty." 3 Sutherland Statutory Construction, § 61.06 (4th ed. 1986 rev.). Moreover, as Chief Judge Murphy pointed out for this Court in *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976), even in the case of statutes ordinarily calling for strict construction, it is the intention of the legislature that governs and, like other statutes they "are to be fairly and reasonably construed, and courts should not, by narrow and strained construction, exclude from their operation, cases plainly within their scope and meaning." Finally on this point, we note that the statute is clearly remedial, and that there also exists a canon of statutory construction that remedial statutes are liberally construed to suppress the evil and advance the remedy. *See State v. Barnes,* 273 Md. 195, 208, 328 A.2d 737 (1974); *Fisher v. Bethesda Discount Corp.,* 221 Md. 271, 157 A.2d

265 (1960); *Smith v. Higinbothom,* 187 Md. 115, 48 A.2d 754 (1946); 2 Sutherland Statutory Construction § 60.01 (4th ed. 1986 rev.). Conflicting canons of statutory construction are nothing new, as Judge Adkins pointed out for the Court in *Kaczorowski v. City of Baltimore,* 309 Md. 505, 512, 525 A.2d 628 (1987), for "[j]ust as in the science of Physics every action has an equal and opposite reaction, so it seems that every canon of statutory construction has an equal and opposite canon."

The cardinal rule of statutory construction is to determine the intent of the legislature. The logical starting place is with the language of the statute, and where that language is clearly consistent with the apparent purpose of the legislation, and does not produce any absurd results, further research may be unnecessary. *Kaczorowski, supra,* 309 Md. at 515, 525 A.2d 628; *Taylor v. Dep't of Employment and Training,* 308 Md. 468, 472, 520 A.2d 379 (1987). Here, the language of the statute clearly embraces the sales contracts involved in this case, and the result of this interpretation is entirely consistent with the obvious intent and purpose of this remedial legislation. Resort to conflicting canons of construction is neither necessary nor desirable in this case.

The second factor the Court of Special Appeals found persuasive is the definition of "property" within the Land Installment Contracts subtitle of the Real Property Article. Section 10–101(d) provides as follows:

'Property' means improved property or improved chattels real, occupied or to be occupied by the purchaser as a dwelling, or an unimproved, subdivided lot or lots intended to be improved for residential purposes.

The Court of Special Appeals reasoned that § 10–101(d) distinguished between improved real property and unimproved property intended to be improved for residential purposes. Additionally, the Court noted that § 14–118 had originally been enacted as § 10–109, and therefore had originally been included within the Land Installment Contracts subtitle.

We do not find it necessary to interpret § 10–101(d) as it applies to land installment sales contracts. It is clear to us the legislature never intended the definition provided by § 10–101(d) to apply to the disclosure requirements of a contract not involving installment sales. As the legislative history of § 14–118 makes clear, the initial placement of that section in the Land Installment Contracts subtitle of Title 10 was an error, and that error was corrected when the disclosure statute was moved to Title 14 in 1982. The Attorney General advised the Governor in 1977 that House Bill 712, the original disclosure statute, was incorrectly codified within the Land Installment Contracts subtitle, and suggested that the oversight be corrected by subsequent legislation.[3] Senate Bill 138, enacted as chapter 262 of the Acts of 1981, made the suggested correction by transferring the statute from Title 10 to Title 14 of the Real Property Article. The title of that bill provides, in part, that it is proposed:

> For the purpose of altering the placement of certain provisions in the Annotated Code relating to contracts of sale of real property in order to clarify the intent of the legislature. . . .

Thus, the definition of property in the Land Installment Contacts subtitle of the Real Property Article is not directly applicable because the disclosure statute had been removed from that subtitle before these contracts were executed, and the definition is of no value by analogy or history because it is apparent that the legislature never intended it to apply to this statute.

## II.

■ Having determined that § 14–118 did require disclosure in the contracts at issue, we turn to the seller's

---

**3.** Letter of May 9, 1977, from Attorney General Francis B. Burch to Governor Marvin Mandel, currently found in the 1977 committee files relating to House Bill 712, Maryland Department of Legislative Reference.

contention that the rights granted by the statute were waived by the purchasers when they failed to interpose any objection at settlement. In *Food Fair Stores v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166 (1964), this Court stated:

> Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.

Private rights conferred by statute, as well as those obtained by contract, may be waived. *Hudson v. Maryland State Housing Co.*, 207 Md. 320, 330, 114 A.2d 421 (1955).

In this case, however, we find no evidence of waiver. The statute grants certain rights to purchasers when the required disclosure is not made in the contract of sale. These are not rights that need be, or could be, exercised at settlement. Indeed, the remedy granted by the statute—recovery by the initial purchaser of "two times the amount of deferred charges he is required to pay"—clearly contemplates that the purchaser will settle on the contract and take title to the property. Assuming that the purchasers had a right to rescind the contracts because of the failure of the seller to disclose these charges, *but see Vincent v. Palmer*, 179 Md. 365, 373, 19 A.2d 183 (1941) (unilateral rescission available only for substantial breach tending to defeat the object of the contract), the purchasers would waive that right by proceeding to settlement. But we are not concerned here with the right of rescission. Rather, we are concerned with the right to proceed with the contract and receive the damages provided by statute for the failure to disclose. This is not a situation, where, as in *Hudson v. Maryland State Housing Co., supra*, 207 Md. at 320, 114 A.2d 421, the statute granted a purchaser the right to avoid a land installment sales contract because of non-disclosure of information, and the purchaser waived that right by accepting the benefits of the contract for a year and a half and had indicated his satisfaction with the extent of the information that was provided. *Id.* at 330, 114 A.2d 421.

Section 14–118, as it appeared at the time the contracts were signed,[4] did not purport to grant a right of rescission, but rather contemplated settlement of the contract and a subsequent right of the purchaser to recover statutory damages. The purchasers in this case were not required to lodge any protest at settlement, and their failure to do so does not constitute a waiver of their rights under the statute.

## III.

█ The seller next argues that the purchasers were not entitled to summary judgment because they did not show that Belleview Sewer and Water, Inc. (Belleview) was "the appropriate water and sewer authority." The record shows that the purchasers alleged that Belleview billed them for the deferred water and sewer facility charges, and copies of those bills were attached to the amended complaint. The purchasers also alleged that their obligation to pay the deferred charges was created by agreements recorded in the land records of Anne Arundel County in 1984, but those agreements are not in the record. The seller did not admit these allegations, and specifically argued that Belleview was not the appropriate water and sewer authority.[5]

The purchasers refer us to sections of the Anne Arundel County Code permitting the County to enter into agree-

---

**4.** Section 14–118 was amended by chapter 517 of the Acts of 1988 to modify the recovery available to the purchaser, and added, as a potential recovery "any deposit monies actually paid by the purchaser that were lost as a result of violation of this subtitle." We intimate no view concerning the possible effect of this change on the purchaser's right of rescission.

**5.** In support of its motion for summary judgment, the seller argued that Belleview was a private corporation, and therefore could not fit the definition of "authority" established by § 9–901(b) of the Environment Article, Maryland Code (1982, 1987 Repl.Vol.). At the time the contracts in this case were signed, that section of the Code did not apply to the part of Anne Arundel County in which these properties are located. Section 9–922 of the Environmental Article, Maryland Code (1982).

ments which allow developers to recoup from subsequent users certain costs of improvements made by the developer to the County's water or waste water system. The purchasers do not, however, offer any evidence of the existence or content of such an agreement between the County and Belleview. We do not propose to discuss, in a vacuum, the circumstances under which Belleview might properly be considered an "appropriate water and sewer authority" within the meaning of the statute. We cannot determine whether the facts that may be dispositive of that issue are contested, because those facts are not before us. It was incumbent upon the purchasers, if they were to have summary judgment, to produce uncontested facts which, as a matter of law, demonstrated that Belleview was an appropriate water and sewer authority. This they have failed to do, and we must therefore direct that the summary judgment entered in their favor be vacated.

## IV.

The final question concerns the amount of damages awarded. The purchasers originally contended they were entitled to judgment for double the total amount of deferred water and sewer facilities charges. They have now abandoned that position, and we think appropriately so. The additional dispute that originally existed between the parties involved the question of whether the judgment should be based upon payments that have accrued during continued ownership of the initial purchaser, or are restricted to payments actually made during continued ownership of the initial purchaser. The parties agreed at oral argument that recovery should be based on payments actually made if the purchasers ultimately prevail in this case. Thus, no issue involving the computation of damages remains before us for resolution.

## V.

In summary, we find that former § 14–118 (now § 14–117(b)) of the Real Property Article applied to the

contracts in this case; that the purchasers did not waive their claim to statutory damages by failing to object at the time of settlement; that the purchasers were not, however, entitled to summary judgment, because the evidence of record does not establish that Belleview is "the appropriate water and sewer authority" within the meaning of the statute; and, that if the purchasers are entitled to damages, those damages shall be twice the amount of deferred water and sewer facilities charges actually paid by each initial purchaser during that purchaser's continued ownership of the property.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FUR-THER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY PETITIONERS AND ONE-HALF BY RESPON-DENT.