674 A.2d 951

**William E. COBURN, Jr.**

v.

**Marcia COBURN.**

**No. 85, Sept. Term, 1995.**

Court of Appeals of Maryland.

April 17, 1996.

246

Mark L. Gitomer (Cardin & Gitomer, P.A., on brief), Baltimore, for petitioner.

Zakia Mahasa, Lisae C. Jordan (Dorothy J. Lennig, Mina Naddaf, on brief), House of Ruth Domestic Violence Legal Clinic, Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

CHASANOW, Judge.

We are called on in this case to determine whether evidence of alleged prior abusive acts is admissible in a protective order hearing pursuant to Maryland's domestic violence statute, Maryland Code (1984, 1991 Repl.Vol., 1995 Supp.), Family Law Article, §§ 4–501 through 4–516. We hold that such evidence is admissible in light of the remedial purpose of the domestic violence statute and affirm the decision of the circuit court.

## I.

The instant case arose out of a petition for protection from domestic violence filed by Marcia Coburn against her estranged husband, William E. Coburn, Jr. The petition was filed *pro se* on March 3, 1995 in the District Court of Maryland sitting in Baltimore City. It alleged that on February 25, 1995, Mr. Coburn slapped, punched, and threatened Ms. Coburn. Ms. Coburn also noted in the space provided for "other injuries" that she had been the victim of past abuse by Mr. Coburn sometime in July of the previous year, that an *ex parte* order had been granted and extended several times, and that Mr. Coburn had harassed her over the telephone at her place of employment.

In response to Ms. Coburn's petition, the District Court issued a temporary *ex parte* order for protection from abuse and scheduled a final protective order hearing for March 10, 1995. The court found that on February 25, 1995, Mr. Coburn shoved Ms. Coburn against a car, hit her in the face open-handed, chased her, and then punched her in the back of her head. The judge also noted a "history of abuse" on the *ex parte* order.

Mr. Coburn, although served with the *ex parte* order, failed to appear at the March 10, 1995 protective order hearing. The District Court granted a final protective order in favor of Ms. Coburn effective through September 26, 1995. The judge noted on the order that on February 25, 1995, Mr. Coburn pushed, shoved, punched, and threatened to shoot Ms. Coburn.

The order did not, however, mention any incidents of past abuse other than the February 25, 1995 occurrence.

Mr. Coburn appealed the decision and a *de novo* protective order hearing was held in the Circuit Court for Baltimore City. In addition to the alleged abuse occurring on February 25, 1995, the Honorable Kathleen O'Ferrall Friedman heard testimony from Ms. Coburn concerning alleged prior instances of abuse occurring on July 3, July 25, and November 9 of 1994.[1] A police officer who witnessed part of the November 9, 1994 incident also testified. Mr. Coburn repeatedly objected to the admission of evidence of past abuse, but the judge allowed the testimony. Judge Friedman asked, "do you understand this is not a criminal case, that this is a domestic violence case? Prior injuries that have been caused by the same respondent are relevant in a domestic violence case." At the conclusion of the hearing, the court found in favor of Ms. Coburn and granted her request for protection. The judge summarized her findings on the protective order as follows: "On 2/25/95 [Mr. Coburn] hit, punched and threatened [Ms. Coburn]. On previous occasions he has abused her and put her safety in jeopardy."

Mr. Coburn petitioned for a writ of certiorari to this Court, contending that the issue before Judge Friedman was limited to whether Mr. Coburn abused Ms. Coburn on February 25, 1995 and that accordingly, evidence of alleged instances of prior abuse was inadmissible. We granted certiorari to consider whether a trial judge may admit evidence of alleged prior abuse in a protective order hearing under the domestic violence statute. We hold that due to the remedial, preventive purpose of this legislation, evidence of alleged past abuse is highly relevant to establish the need for protection and the

---

1. Ms. Coburn testified at the hearing that on July 3, 1994, Mr. Coburn punched her in the face and threw her down a flight of stairs. Ms. Coburn also alleged that on July 25, 1994, Mr. Coburn made harassing telephone calls at her work threatening to kill her. Finally, Ms. Coburn testified that on November 9, 1994, Mr. Coburn attempted to run her off the Baltimore Beltway.

appropriate remedy, and thus is admissible in a protective order hearing.

## II.

 Preliminarily, we note that the instant case is moot because the final protective order at issue expired on September 26, 1995. A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy. *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989). Generally, a moot case is dismissed without our deciding the merits of the controversy. *State v. Peterson*, 315 Md. 73, 82, 553 A.2d 672, 677 (1989). This Court in rare instances, however, may address the merits of a moot case if we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct. *See Peterson*, 315 Md. at 82–83, 553 A.2d at 677. We stated in *Lloyd v. Supervisors of Elections*, 206 Md. 36, 111 A.2d 379 (1954), that if "the matter involved is likely to recur frequently" and "the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision," we would be justified in deciding a moot issue. 206 Md. at 43, 111 A.2d at 382.

 We exercise our discretion to decide the issue raised in the instant case because it is likely to recur frequently but will escape judicial review by this Court due to the limited duration of protective orders. *See* § 4–506(g) (protective orders not to exceed 200 days in duration).[2] In addition, the issue involves construction of a statute routinely applied by courts of this state, and our interpretation of it will assist judges in determining whether victims of abuse are in need of protection. *See Peterson*, 315 Md. at 85, 553 A.2d at 678. Because the issue is of public importance, we find more than adequate justification in proceeding to review the merits.

---

2. Unless otherwise provided, all statutory citations herein are to Maryland Code (1984, 1991 Repl.Vol., 1995 Supp.), Family Law Article.

## III.

### A.

Domestic violence is the leading cause of injury to women in this country.[3] Elizabeth M. Schneider, *The Violence of Privacy*, 23 CONN.L.REV. 973, 981 (1991). According to some estimates, there are approximately four million incidents of domestic violence against women annually. *Developments in the Law—Legal Responses to Domestic Violence*, 106 HARV.L.REV. 1498, 1501 (1993). The problem of domestic abuse, however, remained largely ignored by our society until the last two decades, when national efforts toward legal and social reform began to surface. *See Developments in the Law*, 106 HARV. L.REV. at 1502, 1505 n. 1; Catherine F. Klein and Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 HOFSTRA L.REV. 801, 810 (1993). Since then, domestic abuse has gained widespread public attention. Social service agencies developed battered women's shelters and hotlines, and state legislatures recognized that domestic violence needed to be adequately addressed.[4] *See The Violence of Privacy*, 23 CONN.L.REV. at 974.

---

**3.** Although we recognize that men can also be victims of domestic abuse, it is clear that in the vast majority of cases, the victims are female. *Developments in the Law—Legal Responses to Domestic Violence*, 106 HARV.L.REV 1498, 1501 n. 1 (1993); Catherine F. Klein and Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 HOFSTRA L.REV. 801, 808 (1993). It has been suggested that between one-third and one-half of all female murder victims are killed by their male partners, compared with a mere four percent of male victims, and between 22 and 35 percent of all injuries in emergency room visits by females are from domestic assaults. Nancy Gibbs, *'Til Death Do Us Part*, TIME, Jan. 18, 1993, at 38, 41. We do not in any way mean to diminish the severity of abuse of male victims. Clearly, our interpretation of the domestic violence statute in the instant case is gender-neutral.

**4.** We note that despite the significant progress that has been made in the domestic violence arena, there is still ample room for further legal and social reform. Domestic abuse remains a prevalent national problem today.

B.

It is against this background that in 1980 the Maryland General Assembly enacted the domestic violence statute (the statute). §§ 4–501 through 4–516.[5] The statute grants courts the power to issue civil protection orders, which can prohibit a perpetrator of domestic violence from, among other things, abusing, contacting or harassing the victim.[6] *See* §§ 4–505 and 4–506. Through the statute, victims of domestic abuse are offered access to the judicial system to seek emergency relief and protection from their abusers. It has been reported that fourteen-thousand victims sought relief from abuse through filing petitions for temporary protective orders in the courts of this state in 1994 alone. Christina Asquith, *Domestic Abuse Cases Multiply*, THE BALTIMORE SUN, November 5, 1995, at 1C, col. 7.

■ The purpose of the domestic abuse statute is to protect and "aid victims of domestic abuse by providing an immediate and effective" remedy. *Barbee v. Barbee*, 311 Md. 620, 623, 537 A.2d 224, 225 (1988). The statute provides for a wide variety and scope of available remedies designed to separate the parties and avoid future abuse. Thus, the primary goals of the statute are preventive, protective and remedial, not punitive. The legislature did not design the statute as punishment for past conduct; it was instead intended to prevent further harm to the victim.

---

5. The statute was enacted by Chapter 887 of the Acts of 1980 and was originally codified as Md.Code (1974, 1980 Repl.Vol., 1980 Supp.), Courts & Judicial Proceedings Art., §§ 4–501 through 4–506. In 1984, the statute was repealed by Chapter 296, § 1 of the Acts of 1984, and was reenacted in the Family Law Article, §§ 4–501 through 4–516.

6. The General Assembly further evinced its understanding of the serious and potentially life-threatening situations that victims of domestic abuse face by implementing a state-wide program to provide shelter, counseling, information, referral and rehabilitation to victims of domestic violence and their children. *See* §§ 4–513 through 4–516.

## C.

The statute defines "abuse" as an act that causes serious bodily harm or places a person eligible for relief in fear of imminent serious bodily harm, battery, assault and battery, rape, sexual offense, or false imprisonment. § 4–501(b)(1). Individuals at risk of domestic violence are covered under the statute as "person[s] eligible for relief" and include current or former spouses, cohabitants, relatives by blood, marriage or adoption, parents, stepparents, children or stepchildren, individuals who reside or resided with an alleged abuser for at least 90 days out of the last year before filing a petition, vulnerable adults, and individuals who have a child in common with an alleged abuser. § 4–501(h).

Section 4–504 of the statute authorizes a person eligible for relief (petitioner) to file a petition alleging abuse against the alleged abuser (respondent)[7] and requesting immediate and temporary relief from the violence.[8] § 4–504(a). A petition may be filed in either a circuit court or District Court. § 4–501(d). The statute requires that the petition be under oath, § 4–504(b)(1)(i), include information of prior or pending action between the parties in any court, provide the nature and extent of the abuse for which relief is being sought, state any previous injury resulting from abuse by the respondent, and provide the whereabouts of the respondent, if known, to facilitate service. § 4–504(b)(1)(ii). The court can waive the filing fee where appropriate. § 4–504(c).

---

**7.** Because under the statute, the term "petitioner" refers to the person seeking protection from domestic violence, § 4–501(i), and the term "respondent" refers to the alleged abuser, § 4–501(j), we shall use these terms and their corresponding definitions in this opinion for the sake of clarity. Although Mr. Coburn is actually the Petitioner and Ms. Coburn is the Respondent on petition for a writ of certiorari to this Court, we refer to them as such only in our mandate.

**8.** Filing a petition for protection from abuse does not initiate divorce proceedings, award permanent custody of children, issue a restraining order, or file criminal charges. Christopher L. Beard and Jacqueline J. Judd, *Victims No More: Changes in Domestic Violence Law,* 25 THE MARYLAND BAR JOURNAL 29, 30 (July/August 1992).

Since relief under the statute is designed to be available for *pro se* applicants, standard petition forms are provided and kept readily available by the courts.[9] These pre-printed forms aid potential petitioners who are not familiar with the specific requirements of the statute. The forms provide space for a petitioner to describe, *inter alia*, the alleged abusive act or acts that occurred and any resulting injuries. A petitioner can then check the desired types of relief on the back of the petition. In addition, a petition form requests that a petitioner include and describe information "of other injuries the [r]espondent has caused the victim in this case." *Petition for Protection*, Form DV–1.

Once a § 4–504 petition is filed, the petitioner appears before a judge for an *ex parte* hearing. § 4–505(a)(1). At the hearing, the presiding judge may enter a temporary order to protect a petitioner from abuse and grant emergency relief if the judge finds that there are "reasonable grounds" to believe that abuse occurred. § 4–505(a)(1). To support the allegations of abuse, the victim may present the court with photographs, medical records, witnesses, the victim's own testimony or any other available proof. *See, e.g.*, Christopher L. Beard and Jacqueline J. Judd, *Victims No More: Changes in Domestic Violence Law*, 25 THE MARYLAND BAR JOURNAL 29, 30 (July/August 1992). The statute gives the court discretion to determine whether to issue an *ex parte* protective order based on the affidavit, testimony and other facts presented. If

---

**9.** A special ad hoc committee, chaired by Judge Mary Ellen T. Rinehardt, Administrative Judge of the District Court of Maryland sitting in Baltimore City, was created by Chief Judge Robert C. Murphy in 1992 to address concerns over implementation of the domestic violence statute. Martha F. Rasin, *The New Domestic Violence Law's Surprising Track Record*, 26 THE MARYLAND BAR JOURNAL 30, 32 (November/December 1993). The committee devised a uniform set of forms for utilization by both the District and circuit courts to implement the domestic violence law. *See id.* These forms include: Petition for Protection From Domestic Violence, Child Abuse, Vulnerable Adult Abuse; *Ex Parte* Order for Protection from Abuse; Protective Order; Petition to Modify/Rescind Protective Order; Order as to Rescission or Modification; and Petition for Contempt. *See* JOHN F. FADER, II AND RICHARD J. GILBERT, MARYLAND FAMILY LAW, at 283 (2d ed. Michie 1995).

abuse is found, the judge may order that a respondent refrain from abusing, contacting or harassing a petitioner, from entering a petitioner's residence and place of employment, and may additionally award temporary use and possession of the home and temporary custody of any minor children. § 4–505(a)(2).

The temporary order also states the time and date of a second hearing to determine if a final protective order should be issued. *See* § 4–506(a) and (b). The *ex parte* order expires a maximum of seven days after a law enforcement officer serves a respondent, and can be extended only up to 30 days in order to effectuate service on the respondent. *See* § 4–505(b) and (c). It is not until the second, full hearing, held within seven days of service of the temporary order on the respondent, that the court can grant extended relief to the victim for up to 200 days. *See* § 4–506(g).

At the second hearing, the alleged abuser is given an opportunity to contest the allegations of abuse and be heard on the issue of whether a final protective order should be granted to the petitioner. § 4–506(a). Even if the respondent fails to appear at the hearing, as in the instant case, the court may issue a final protective order based on evidence presented by the petitioner, as long as the respondent has been served with the temporary protective order or the court otherwise has personal jurisdiction over the respondent. *See* § 4–506(c)(1).

The court is authorized to grant a final protective order, not to exceed 200 days, § 4–506(g), if the court finds by clear and convincing evidence that abuse occurred. § 4–506(c)(1)(ii). The court may, in addition to ordering any or all of the remedies available for the temporary order, establish temporary visitation with a minor child, direct the respondent to participate in a domestic violence program or counseling, award emergency family maintenance and temporary use and possession of a jointly owned vehicle, and order the respondent to pay court costs. § 4–506(d).

The statute provides for modification or rescission of the protective order within the duration of the order after notice

to both parties and a hearing. § 4–507(a). A *de novo* appeal in the circuit court from the District Court's order is available to either a petitioner or respondent. § 4–507(b)(2). *See also Barbee, supra.* The District Court protective order remains in effect pending appeal. *See* Maryland Rule 7–112(b).

## IV.

### A.

To determine whether evidence of past abuse is admissible in a protective order hearing, it is essential that we look to the legislature's purpose in adopting the domestic violence statute. This Court has made clear that the cardinal rule in construing any statute is to ascertain and effectuate the intent of the legislature. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). The primary source from which to determine this intent is the language of the statute itself. *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466, 620 A.2d 340, 342 (1993). In seeking out the legislative intent, we examine the statute as a whole, considering the interrelationship or connection among all of its provisions. *Vest,* 329 Md. at 466–67, 620 A.2d at 342. Furthermore, remedial statutes are to be liberally construed to "suppress the evil and advance the remedy." *Harrison v. John F. Pilli & Sons, Inc.,* 321 Md. 336, 341, 582 A.2d 1231, 1234 (1990). With these principals in mind, we turn to the domestic violence statute.

Section 4–506 does not specifically address what evidence is admissible in a final protective order hearing. It provides that "if the court finds by clear and convincing evidence that *the alleged abuse* has occurred" it may grant a protective order. § 4–506(c)(1)(ii) (emphasis added). This section also lists a number of factors for a judge to assess in determining whether to order a respondent to vacate the home, § 4–506(e), and includes *"the history and severity of abuse in the relationship between the respondent and any person eligible for relief."* § 4–506(e)(5) (emphasis added). The only other language concerning evidence found in the statute provides that a petition for temporary relief from

abuse shall include information concerning "the nature and extent of the abuse for which the relief is being sought, *including information known to the petitioner concerning previous injury resulting from abuse by the respondent.*" § 4–504(b)(1)(ii)(1) (emphasis added). The language found in both sections indicates that the legislature recognized the importance of evidence of a pattern of abuse in determining the need for protection against future abuse. To allow evidence of past injury to be admitted at the *ex parte* hearing for temporary relief, but preclude its introduction at the final protective order hearing would be illogical and in contradiction with the principles of statutory construction outlined above. To deprive a petitioner of the use of that evidence to show the need for appropriate remedies, other than vacation of the home, would also be illogical and would totally eviscerate the preventive purpose of the statute. In construing the statute as a whole, we believe the legislature intended for evidence of past abuse, in addition to evidence of the abuse that led to the filing of the *ex parte* petition, to be admissible at both temporary and final protective order hearings. This result is consistent with the protective design of the legislation and works to "suppress the evil and advance the remedy." *See Harrison,* 321 Md. at 341, 582 A.2d at 1234.

## B.

We next address Mr. Coburn's argument that evidence of alleged past abuse between a petitioner and respondent is irrelevant in a final protective order hearing because the only question at issue is whether the one incident of abuse that led to the filing of the *ex parte* petition occurred. We disagree with Mr. Coburn.

The purpose of the final protective order hearing is to determine whether a final protective order should be issued, not solely to prove that a single act of abuse occurred. In determining whether to issue a protective order, the judge should consider not only evidence of the most recent incident of abuse, but prior incidents which may tend to show a pattern of abuse. Allegations of past abuse provide the court with additional evidence that may be relevant in assessing the

seriousness of the abuse and determining appropriate remedies. The legislature expressly recognized this by including the history of abuse between the parties as a factor in ordering at least one remedy, vacation of the home. *See* § 4–506(e)(5). Admitting prior acts of abuse aids in assessing the need for immediate and future protection. The fact that there is a history of prior abusive acts implies that there is a stronger likelihood of future abuse. *See Cruz–Foster v. Foster,* 597 A.2d 927, 930 (D.C.App.1991) ("[A] defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct."); *Providing Legal Protection For Battered Women,* 21 HOFSTRA L.REV. at 900 ("Due to the cyclical nature of domestic violence, introduction of evidence of the relationship's history of abuse . . . is vital in allowing a court to fully comprehend the risk posed to a particular petitioner.") (footnote omitted). Thus, there is a corresponding need for more severe remedies.

One act of abuse may not warrant the same remedy as if there is a pattern of abuse between the parties. Different remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse. The more abuse that occurred in the past, the higher the likelihood that future acts of abuse will occur and thus, the need for greater protective measures. Thus, the statute appropriately gives discretion to the trial judge to choose from a wide variety of available remedies in order to determine what is appropriate and necessary according to the particular facts of that case. *See* § 4–506(d). Evidence of prior incidents of abuse is therefore highly relevant both in assessing whether or not to issue a protective order and in determining what type of remedies are appropriate under the circumstances. *See Providing Legal Protection For Battered Women,* 21 HOFSTRA L.REV. at 901.

We believe that excluding evidence of past abuse would violate the fundamental purpose of the statute, which is to prevent future abuse. The statute was not intended to be punitive. Its primary aim is to protect victims, not punish

abusers. Whether a respondent has previously abused a petitioner is important and probative evidence in determining the appropriate remedies. Protective orders are based on the premise that a person who has abused before is likely to do so again, and the state should offer the victim protection from further violence.

In holding that evidence of past abuse is relevant in determining the present need for a protective order, this Court follows the trend of many jurisdictions. *See Cruz–Foster,* 597 A.2d at 930 (considering past history of abuse to be critical in determining whether "good cause" exists for extending a protective order); *Boniek v. Boniek,* 443 N.W.2d 196, 198 (Minn.Ct.App.1989) ("Past abusive behavior, although not dispositive, is a factor in determining cause for protection."); *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 637 (Mo.Ct.App. 1990) (noting that trial court determines potential for violence based in part on past incidents of abuse or threatened abuse); *Roe v. Roe,* 253 N.J.Super. 418, 601 A.2d 1201, 1208 (App.Div. 1992) (recognizing that a history of domestic violence between the parties is an evidentiary consideration under domestic violence statute); *Steckler v. Steckler,* 492 N.W.2d 76, 81 (N.D.1992) ("[P]ast actions act as relevant and pragmatic evidence in assisting the court's determination of whether domestic violence is actual or imminent" and the court may consider past action as evidence "of what might occur in the future."); *Snyder v. Snyder,* 427 Pa.Super. 494, 629 A.2d 977, 981–82 (1993) (holding that incidents of prior abuse are admissible in protective order hearings even if not pleaded in original petition); *Strollo v. Strollo,* 828 P.2d 532, 535 (Utah App.1992) (holding that individuals who are "reasonably in fear of physical harm resulting from past conduct coupled with a present threat of future harm" are protected by the protective order statute). *See also Providing Legal Protection For Battered Women,* 21 HOFSTRA L.REV. at 900–04.

## C.

Alternatively, Mr. Coburn argues that evidence of prior abusive acts is inadmissible under Md. Rule 5–404(b). The rule prohibits admission of evidence of prior bad acts to

prove that the person acted in conformity with those acts, subject to certain exceptions. We hold that this rule is inapplicable here because the purpose of admitting evidence of prior abuse in a domestic violence protective order hearing is not to prove that a respondent has acted in conformity with those prior acts, but instead to prove the likelihood of future abuse.[10]

The policy consideration underlying the general prohibition against admission of evidence of prior crimes or bad acts is that such evidence tends to prejudice the defendant because the trier of fact will improperly use the evidence to determine the ultimate issue of guilt. *See Acuna v. State,* 332 Md. 65, 75, 629 A.2d 1233, 1238 (1993). This rationale does not apply in a civil protective order hearing where the ultimate issue is what, if any, remedy is necessary to protect the petitioner based on the likelihood of future abuse. Evidence of past abusive acts is admissible to show that abuse is likely to recur and to help the court determine what remedies will adequately prevent future abuse. Hence, Md. Rule 5–404(b) is inapplicable and evidence of prior incidents of abuse is admissible.

Although not raised by Ms. Coburn, we note that evidence of specific past acts may be admissible under Md. Rule 5–405 because a respondent's character as an abuser may be at issue, tending to establish the potential for future abuse. *See* 1 McCORMICK ON EVIDENCE § 187, at 789–91 (John W. Strong ed., 4th ed. 1992). Section (b) of Md. Rule 5–405 provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of relevant specific instances of that person's conduct."

### D.

Lastly, Mr. Coburn asserts that he was denied due process of law because he was not given notice that evidence

---

**10.** We need not consider whether evidence of prior abuse may be admissible under Maryland Rule 5–404(b) for purposes such as proof of motive, intent, or absence of mistake or accident. *See* 5 LYNN McLAIN, MARYLAND EVIDENCE § 404.5, at 353 (1987).

of alleged prior abusive acts would be introduced at the hearing. Ms. Coburn responds in her brief that "Mr. Coburn did not request a continuance at trial to allow him additional time to prepare a response to the allegations of past abuse." There may be instances where there is no advance notice of the introduction of alleged prior abusive acts and due process may require a brief recess to allow time for a respondent to call witnesses or acquire evidence to rebut or defend against those allegations.[11] *See, e.g., Snyder,* 629 A.2d at 982 n. 3. In general, however, a respondent is put on notice that acts of alleged past abuse can be introduced at a protective order hearing when a petitioner files an *ex parte* petition for protection. A petitioner should also, whenever possible, allege all instances of past abuse on the *ex parte* petition that might be offered in later court hearings.

Failure to list every allegation of past abuse will not prevent such evidence from being admitted. Such a requirement would place a burden too onerous on a petitioner filing *pro se.* We hold that generally, an *ex parte* petition should indicate prior incidents of abuse to serve as a form of notice to the respondent, but the absence of that information will not preclude a petitioner from introducing evidence of prior incidents of abuse absent clear prejudice to the respondent. Such prejudice was not established in the case *sub judice.*

In the instant case, Ms. Coburn alleged on the *ex parte* petition that previous abusive acts by Mr. Coburn included: "[a]buse in July complaint number 94–1840636, Ex

---

**11.** Although a court may, in its discretion, grant a brief recess so that a respondent can secure proffered evidence or testimony, the court must be cognizant of the problems a recess or continuance might cause a petitioner. *See generally Providing Legal Protection for Battered Women,* 21 Hofstra L.Rev. at 1056–57. The protective order hearing comes before the court upon the expiration of the temporary *ex parte* order and therefore a petitioner would be without judicial protection if the court were to grant an extended continuance. Accordingly, when lack of notice could prejudice a respondent, the judge should generally grant the briefest recess or continuance necessary to permit the respondent to summons proffered rebuttal witnesses or secure proffered rebuttal evidence.

parte taken extended four times. [Mr. Coburn] evaded service at work. Telephone misuse complaint by my employer 7/25/94." In addition, the judge noted a "[h]istory of abuse. Crim[inal] charges filed and cross-complaint" on the *ex parte* order. Under these particular circumstances, Mr. Coburn had sufficient notice that some evidence of prior abuse would be introduced. Although Ms. Coburn's petition should not be used as a model, it adequately averred that Mr. Coburn had previously threatened to or did abuse her in the past.

## V.

We hold that allegations of a prior history of abuse are admissible at a protective order hearing regardless of whether such allegations were sufficiently pleaded in the original petition for protection. We do not believe the legislature intended to limit the evidence at a protective order hearing to the specific allegation of abuse that led to the filing of the *ex parte* petition. Such a result would be directly contrary to the remedial and preventive purpose of the statute. Evidence of past abuse is often the most indicative evidence of the likelihood of future abuse. Such evidence assists a judge in understanding the context in which the present allegation of abuse occurred and helps that judge formulate an appropriate remedy in order to adequately protect the victim.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.*