705 A.2d 330

**Geoffrey W. KAUFMAN, Appellant,**

v.

**Dawn Marie MOTLEY, Appellee.**

**No. 919, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 5, 1998.

Christopher M. Rolle (Timothy T. Conlon and Rolle & Havens, on the brief), Frederick, for Appellant.

Christopher May (Offutt, Horman, Burdette & Frey, P.A., on the brief), Frederick, for Appellee.

Mary Beth Kaslick and Varner & Kaslick, Frederick, on the brief, for minor children.

Argued before MOYLAN, THIEME and KENNEY, JJ.

MOYLAN, Judge.

This case involves Maryland's Domestic Violence Act, Maryland Code, §§ 4–501 through 4–516 of the Family Law Article.[1] Section 4–504 authorizes a "person eligible for relief" to petition for a protective order. Section 4–501(h)(6) defines a "person eligible for relief" as including "an individual who has a child in common with" the person alleged to have committed

---

1. Maryland enacted the Domestic Violence Act in 1980 by Chapter 887 of the Acts of 1980. It has been codified as part of the Family Law Article since 1984.

the abuse. *Coburn v. Coburn,* 342 Md. 244, 253, 674 A.2d 951 (1996).

The appellant, Geoffrey W. Kaufman, and the appellee, Dawn Marie Motley, although unmarried, have two minor children in common. On February 24, 1997, they had entered into a Consent Order for Custody and Visitation under which primary physical custody of the two children was given to the appellant. Judge Herbert L. Rollins of the Circuit Court for Frederick County formally adopted the parties' Consent Order.

Approximately one month later, the appellee, as a "person eligible for relief," filed a Petition for Protection from Domestic Violence pursuant to § 4–506. The appellee stated that the appellant was (1) threatening her and any person who was in her presence; (2) stalking her at night, with the children present; and (3) making threats regarding arson. On May 7, 1997, a hearing on the merits of the petition was held before Judge Mary Ann Stepler. At the conclusion of the hearing, Judge Stepler made the following findings of fact:

> ... [I] find by clear and convincing evidence that there were threats of ruining [the appellee's] life, arson in the middle of the night, threats to do harm to all who associated with [the appellee], things happening in the middle of the night, the stalking behavior with the children present, the threatening behavior with the children present, all are acts that I find by clear and convincing evidence would place [the appellee and the minor children] in fear of imminent serious bodily harm.

Based on that fact finding, the Judge issued the protective order, directing:

> That the respondent shall not abuse, threaten or harass the petitioners, that the respondent shall not contact in person, by telephone, in writing, or by any other means, attempt to contact, or harass Dawn Motley. That the respondent shall not enter the residence of Dawn Motley, or be within one mile of said residence at 316 Willow Avenue, Frederick, Maryland, or any other residence where she may occu-

py. . . . That he shall stay away from her place of employment at Wal Mart, or any other place of employment. *See Coburn v. Coburn,* 342 Md. 244, 674 A.2d 951 (1996).

Judge Stepler's order went on to provide that "the custody of [the minor children] is awarded to [the appellee]." The present appeal is taken from the issuance of that protective order. On appeal, the appellant raises two contentions:

1. That the circuit court erred in issuing a protective order for an indefinite period, in direct violation of § 4–506(g); and

2. That the circuit court committed reversible error by awarding custody of the two minor children to the appellee, despite the presence of a valid Consent Order for Custody and Visitation under which custody was awarded to the appellant, without a judicial finding (1) of a material change in circumstances, and (2) that such change was in the best interests of the children.

The appellant's first complaint is that the protective order should be vacated because § 4–506(g) mandates that any protective order issued "shall be effective for the period stated in the order, *not to exceed 200 days* "[2] but that the open-ended protective order in this case was erroneously ordered to be effective "until such time as ordered otherwise." His argument is that if the order was arguably excessive in scope by not expressly limiting itself to two hundred days or less, it was thereby null and void *ab initio* and had no vitality even within the first two hundred days.

For that draconian proposition, the appellant relies on *Zerhusen v. Zerhusen,* 73 Md.App. 386, 534 A.2d 686 (1988). In *Zerhusen,* a couple had filed for a divorce. Prior to receiving a judicial decree of divorce, the wife filed an *ex parte* petition for protection from domestic violence pursuant to § 4–505.

---

2.  Pursuant to an amendment effective on August 1, 1997, § 4–506(g) now provides that a protective order may be effective for a period of up to twelve months. At the time of the hearing in this case, however, the earlier provision was in effect, providing that the order should not exceed two hundred days.

Based on the allegations in the petition, the chancellor granted the *ex parte* order and removed the husband from the family residence for a period of fifteen days. The husband immediately moved to quash the order, claiming that the statute only permitted an *ex parte* order to be in effect for a maximum of five days.[3] Despite the express and unambiguous statutory language, the chancellor refused to quash the order. This Court reversed the chancellor's decision and held the *ex parte* order to be a nullity:

> The statute specifically confers upon a court the power, on an *ex parte* petition, to order an alleged abuser from the marital residence for a period of *five days*, not for any other period in excess of five days.

> \* \* \* \*

> We read [the statute] as mandating that courts are without authority to enter *ex parte* protective orders for more than five days after service of a copy of the petition upon the alleged abuser. *Any order by a court that endeavors to extend that five day period permitted by [the statute] is a nullity.*

*Id.* at 389–90, 534 A.2d 686 (First emphasis in original; second emphasis supplied).

We do not find *Zerhusen* to be controlling. In *Zerhusen,* the Court was dealing with an extraordinary situation, i.e., an *ex parte* proceeding and the granting of an *ex parte* order. By its very nature, an *ex parte* proceeding prevents one party from defending himself or herself against the accusations of the other. This Court focused on that point, stating:

> Furthermore, the statute commands that a "protective order hearing shall be held no later than 5 days after the temporary *ex parte* order is served on the alleged abuser." Thus, *it is apparent that the Legislature* desired a minimal interruption of the family unit and, as a result, *severely*

---

**3.** The maximum duration of an *ex parte* order was extended to seven days by a 1992 amendment.

*limited the time frame during which the alleged abuser could be ousted from the marital home, absent a hearing on the merits.*

\* \* \* \*

We infer that the Legislature was well aware of the difficulty trial courts face in scheduling hearings within the time prescribed by the statute. *The General Assembly, nonetheless, obviously believed that the difficulty confronting the courts is secondary when compared with the prolonged disruption of the family unit.*

*Id.* (Emphasis supplied).

Indeed, when the subject matter of a hearing turns from temporary *ex parte* orders, pursuant to § 4–505, to protective orders of much longer duration, pursuant to § 4–506, the procedural safeguards are all in place. Subsection 4–506(a) provides that the respondent under § 4–505 "shall have an opportunity to be heard on the question of whether the court should issue a protective order." The date and time of the protective hearing shall be promptly set and must be held within seven days after the temporary *ex parte* order is served on the respondent. Subsection 4–506(b)(2) sets out in elaborate detail the serving of notice on the respondent, various information of which the respondent shall be notified, and clear advice to the respondent as to his responsibilities after receiving the notice.

■ With all of the normal procedural safeguards in place, there is no need to place the same constraints on a protective order, only issued after a full hearing on the merits, as there is to place such constraints on an *ex parte* order. In this case, there was a full hearing on the merits. The appellant had the opportunity to present evidence, to cross-examine the appellee's witnesses, and to present argument to the court. Judge Stepler made detailed findings of fact, fully supported by the evidence, that abundantly justified her issuance of the protective order. *Coburn v. Coburn*, 342 Md. 244, 674 A.2d 951 (1996); *Ricker v. Ricker*, 114 Md.App. 583, 587, 691 A.2d 283

(1997). If, moreover, the appellant believed that that order was flawed because it was open-ended, the appellant had every opportunity to bring that point to Judge Stepler's attention but failed to do so.

Although we agree with the appellant that under the statute a protective order potentially loses its vitality after two hundred days, we hold that the order was fully effective within the initial two hundred days and was not, as the appellant contends, void *ab initio*.

■ The appellant's second contention is that Judge Stepler erroneously modified the preexisting custody agreement by awarding custody of the two minor children to the appellee. His argument is that custody, under the prevailing case law, cannot be changed absent express findings that there has been a material change of circumstances and that the modification of the custody arrangement is in the best interest of the child. The appellant is confusing two very separate modalities by which a court may issue a custody order. The general rule for the modification of custody is, indeed, as the appellant describes it. *Hardisty v. Salerno,* 255 Md. 436, 438, 258 A.2d 209 (1969); *Taylor v. Taylor,* 246 Md. 616, 621–22, 229 A.2d 131 (1967); *Wagner v. Wagner,* 109 Md.App. 1, 29–30, 674 A.2d 1 (1996). That was not, however, the modality employed in this case.

Section 4–506(d), listing the forms of relief that may be granted under a protective order, expressly provides that, as part of the protective order itself, the judge may "award temporary custody of a minor child of the respondent [the appellant here] and a person eligible for relief [the appellee here]." *Barbee v. Barbee,* 311 Md. 620, 624, 537 A.2d 224 (1988), expressly referred to the right "to be awarded temporary custody of the children" as one of the protections afforded by the Domestic Violence Act. *See also Coburn v. Coburn,* 342 Md. 244, 255, 674 A.2d 951 (1996).

The modification of custody in this case was part of the protective order. Section 4–506 itself establishes the statutory justification that needs to be shown. It was shown in this

case. Judge Stepler made express findings of fact explaining her reasons for modifying the custody:

> The conduct that I have heard by [the appellant] quite truthfully has been shocking. Ms. Kaslick [attorney for the minor children] said after hearing the testimony that she in fact was in fear for the children.... This stalking behavior with the children in the car ... [T]hey [the children] have to understand that their father thinks their mother is a bad person. I don't know what other conclusion they can come to. This is obviously not in their best interest. I do find by clear and convincing evidence that ... the stalking behavior with the children present, the threatening behavior with the children present, all are acts that I find by clear and convincing evidence would place all petitioners, which includes the children, in fear of imminent serious bodily harm.

In rejecting both of the appellant's contentions, we are hereby affirming the trial court's decision. We caution the appellee, however, not to read the decision that is being affirmed too broadly. At oral argument, it appeared that the appellee was construing the trial court's decision as a more general custody modification rather than as a temporary custody award pursuant to § 4–506(d)(6). It was not a more general custody modification. It may well be that an adequate evidentiary predicate was laid for a more general custody modification, but the necessary findings were not made and the necessary procedural formalities were not observed.

A review of the transcript of the hearing before Judge Stepler—from the opening statement of counsel through the presentations of the witnesses to the closing argument— makes it transparently clear that the only thing before the court was the application for a protective order pursuant to § 4–506. Anything done pursuant to that order, therefore, was subject to the two-hundred-day limitation. Indeed, *Barbee v. Barbee*, 311 Md. 620, 623, 537 A.2d 224 (1988), referred to the purpose of the Domestic Violence Act as the providing of "immediate" protection:

That the Act was designed to aid victims of domestic abuse by providing an immediate and effective nonmonetary remedy is readily apparent. To this end the Legislature empowered courts to order that . . . specified protective devices be implemented, all to protect the victims' immediate and future safety.

*See also Coburn v. Coburn*, 342 Md. at 253 n. 8, 674 A.2d 951 ("Filing a petition for protection from abuse does not . . . award permanent custody of children.")

It may well be that Judge Stepler's open-ended order, even beyond the statutorily authorized two hundred days, enjoys some sort of presumptive validity, continuing in effect unless and until formally challenged. It may be that the order beyond the two hundredth day is only voidable rather than void, an issue that is not before us and which we do not decide. Our advice to both parties, however, is that they be alert to this possibly unsettled state of affairs and take whatever steps they may deem appropriate to deal with whatever unresolved problems may possibly present themselves once the two-hundred-day order has run its course, which it apparently did on November 23, 1997. Whatever problems might arise are not before us on this appeal and we are not even speculating with respect to what they might be or with respect to how to deal with them. We are simply alerting the parties to the possibility that they may wish to give some thought to the state of affairs that may confront them in the aftermath of the protective order.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**