*Ronalda Sullivan v. Caruso Builder Belle Oak, LLC*, No. 1909, Sept. Term 2019. Opinion by Zic, J.

**REAL PROPERTY – MD. CODE ANN., REAL PROP. ARTICLE § 14-117 – PROPERTY SALES CONTRACT REQUIREMENTS – ESTIMATED COSTS OF DEFERRED WATER AND SEWER CHARGES – DISCLOSURES**

Section 14-117(a)(3)(i) of the Real Property Article of the Maryland Code provides that in an initial sale contract for residential real property in Prince George's County, a seller must provide the purchaser certain disclosures regarding deferred water and sewer assessment costs for which the purchaser may be liable. Two of the required disclosures under the statute are the "estimated payoff amount of the assessment" and the "amount remaining on the assessment, including interest."

The plain language of the statute makes clear that for the "estimated payoff amount," the seller must disclose to the purchaser an estimate that reflects a good faith calculation of the advance payoff amount that would be due on the settlement date.

The legislative history of § 14-117(a)(3)(i) supports our plain language interpretation. The legislative history indicates that the General Assembly intended the statutory disclosures to improve transparency and provide accurate information to purchasers, thereby providing purchasers the opportunity to save money by prepaying the assessment in full and avoiding interest payments.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1909

September Term, 2019

_____

RONALDA SULLIVAN

v.

CARUSO BUILDER BELLE OAK, LLC

_____

Nazarian,
Beachley,
Zic,

JJ.

_____

Opinion by Zic, J.

_____

Filed:  July 2, 2021

* Friedman, Daniel A., and Gould, Steven B.,
JJ., did not participate in the Court's decision to
report this opinion pursuant to Maryland Rule
8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

When a purchaser buys residential real property in Prince George's County, the seller must provide the purchaser with certain disclosures regarding the deferred water and sewer assessment in the initial sale contract under § 14-117(a)(3)(i) of the Real Property Article of the Annotated Code of Maryland. Deferred water and sewer assessments are paid by purchasers and are used to reimburse the entities or persons who installed water and sewer lines on the residential real property. Based upon our reading of the statute, the purpose of these disclosures is to inform purchasers that the water and sewer assessments exist and to inform them of the costs of paying the assessments. Two of the required disclosures—the "amount remaining on the assessment, including interest" and the "estimated payoff amount of the assessment"—are at issue in this case. Md. Code Ann., Real Prop. § 14-117(a)(3)(i)(4), (7) (2015 Repl. & Supp. 2020). While the disclosures are not defined by the statute, the "amount remaining on the assessment, including interest" is the total cost of paying the assessment over a certain number of years, which includes interest. Purchasers, however, have the option of prepaying the entire assessment or paying off the amount remaining on the assessment in total satisfaction at any time—this is the "estimated payoff amount of the assessment."

Appellant Ronalda Sullivan contends that appellee Caruso Builder Belle Oak, LLC ("Caruso") did not comply with the disclosure requirements under § 14-117(a)(3)(i) in her initial sale contract for residential real property in Prince George's County and that she properly stated a claim upon which relief may be granted. Caruso argues that it complied with the disclosure requirements of § 14-117(a)(3)(i) and that Ms. Sullivan failed to state a claim upon which relief may be granted. The Circuit Court for Prince

George's County agreed with Caruso and granted its renewed motion to dismiss.  Ms. Sullivan appealed.  As we explain below, we disagree with the circuit court and conclude that it erred by granting Caruso's renewed motion to dismiss.  We therefore reverse the judgment of the circuit court and remand the case for further proceedings.

## BACKGROUND

Ms. Sullivan contracted with Caruso, a developer, to purchase a newly constructed home on real property in Prince George's County.  The real property is located in a subdivision known as Belle Oak.  The parties entered into an Agreement of Purchase and Sale ("Purchase Agreement") on July 17, 2015, and Ms. Sullivan closed on her property on February 24, 2016.  The Purchase Agreement contains 13 addenda and is subject to a Declaration for Deferred Water and Sewer Facilities Charges ("Declaration").

The Declaration states that the annual assessment "is for the purpose of reimbursing the Utility Company for its cost of providing Water and Sewer Facilities to the Lots."  Addendum Number 11 to the Purchase Agreement provides that the assessment is "payable to a private utility company or its assigns (the 'Company')."[1]  The Declaration requires each lot owner to pay an annual assessment of $900.00 per year, with a "reasonable rate of interest," for a period of 23 years.  Addendum Number 1 to the Purchase Agreement provides that the interest rate on the assessment is 8%.  In total, a

---

[1] In this case, the assessment is paid to Belle Oak Utilities, LLC to reimburse it for its expense of providing water and sewer facilities to Ms. Sullivan's real property.  Under the Purchase Agreement, Caruso is the seller of the real property and is responsible for disclosing the cost of the assessment owed to Belle Oak Utilities, LLC to Ms. Sullivan. *See* Real Prop. § 14-117(a)(3), (b)(2).

2

purchaser is obligated to pay $20,700 for deferred water and sewer charges if the purchaser pays the fee annually over the 23-year period. Additionally, Addendum Number 11 states that "[t]here is a right of prepayment for the Water and Sewer Charges, and the prepayment figure may be ascertained by contacting the Company or by reviewing the Water and Sewer Declaration." The Declaration provides that "[u]pon written request of an Owner, the Utility Company, its successors, assigns, or designees shall provide Owner with a present day value of any assessment levied pursuant to this Declaration and Owner may prepay the outstanding assessment at present day values in total satisfaction of Owner['s] obligations hereunder."

The disclosures under § 14-117(a)(3)(i) that Caruso provided to Ms. Sullivan are listed in Addendum Number 1 to the Purchase Agreement:

> **Disclosure Required Under Section 14-117 – Estimated Deferred Water and Sewer Charges.**
>
> The Purchaser is hereby advised . . . that the Seller shall disclose the estimated cost . . . of any deferred water and sewer charges for the Property for which the Purchaser may become liable. . . . The following additional information is hereby disclosed:
>
> 1. As stated above, there are deferred private water and sewer assessments;
>
> 2. The amount of the annual assessment **$900.00**;
>
> 3. The approximate number of payments remaining on the assessment is **23 years**;
>
> 4. The amount remaining on the assessment, including interest is **$20,700**;

3

5.  The name and address of the person or entity most recently responsible for collection of the assessments is: Belle Oak Utilities, LLC c/o Sandy Excavating, 4230 Ray Road, LaPlata, Maryland 20646;

6.  The interest rate on the assessments is 8 percent;

7.  The estimated payoff amount of the assessment is **$20,700**;

8.  The payoff of the assessment is allowed without prepayment penalty.

Importantly, the disclosures for the "amount remaining on the assessment, including interest" and the "estimated payoff amount of the assessment" are both $20,700.

Ms. Sullivan filed a complaint ("Original Complaint") against Caruso in the Circuit Court of Prince George's County on her own behalf and on behalf of a class of similarly situated persons.[2] Caruso subsequently filed a motion to dismiss for failure to state a claim, alleging that Ms. Sullivan's Original Complaint presented conflicting and

---

[2] By the parties' consent, this case serves as a test case for six other cases pending in the Circuit Court for Prince George's County involving similarly situated homeowners and developers: *Scott v. Caruso Builder Balmoral, LLC*, No. CAL19-06086 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019); *Chesier v. Caruso Windsong, LLC*, No. CAL19-06088 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019); *Lewis v. Caruso Builder Indianhead, LLC*, No. CAL19-06089 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019); *White v. Caruso Builder 2016, LLC*, No. CAL19-06090 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019); *Jones v. Caruso Builder Washington Overlook, LLC*, No. CAL19-06091 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019); *Blakeney v. Caruso Bowie, LLC*, No. CAL19-06092 (Md. Cir. Ct. Prince George's Cnty. filed Feb. 22, 2019). Due to the similarity of the cases, counsel for all parties agreed to designate *Sullivan v. Caruso Builder Belle Oak, LLC* as the active case and to stay the remaining six cases pending the outcome of *Sullivan*. Counsel for all parties agreed that this appeal will be binding on the six stayed cases.

inaccurate claims. Caruso argued that the Original Complaint erroneously alleged that the Purchase Agreement failed to disclose the "estimated payoff amount" of the water and sewer assessment because the "estimated payoff amount" was disclosed twice in the Purchase Agreement, in both Addendum Number 1 and Addendum Number 11. Ms. Sullivan initialed and signed the Purchase Agreement on the pages that contained the disclosures.

Ms. Sullivan subsequently filed a First Amended Class Action Complaint ("Amended Complaint"), adding supplemental factual allegations:

> 12. When Caruso enters into purchase agreements, Caruso *fails to accurately disclose* in the contract the estimated payoff amount of the water and sewer assessment.
>
> . . . .
>
> 15. Through its use of form purchase agreements, Caruso *failed to disclose important information* related to the existence and cost of the water and sewer assessments to new home purchasers in Prince George's County, Maryland.
>
> . . . .
>
> 27. The Declaration provides that an "Owner may prepay the outstanding assessment at present day values in total satisfaction of Owners' obligations hereunder." Declaration, Liber 30568 at Folio 447.
>
> 28. [Ms. Sullivan]'s purchase agreement provided that the property is subject to annual water and sewer assessments in the amount of nine-hundred dollars ($900.00) per year for twenty-three (23) years.

5

29. The purchase agreement disclosed that the "amount remaining on the assessment, including interest is $20,700[.]"

30. The purchase agreement also disclosed that the "estimated payoff amount of the assessment is $20,700[.]"

(second and third alteration in original) (emphasis added). Ms. Sullivan further expanded upon the allegations in her single count for violation of Real Property § 14-117(a)(3)(i)(7):

49. Md. Code Ann., Real. Prop. § 14-117(a)(3)(i)(7) provides that a contract for the initial sale of residential real property located in Prince George's County for which there are deferred private water and sewer assessments recorded by a declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure that includes the estimated payoff amount of the assessment.

50. [Ms. Sullivan]'s purchase agreement provided that the "estimated payoff amount of the assessment is $20,700[.]"

51. This amount ($20,700) was also the same amount disclosed as being the "amount remaining on the assessment, including interest[.]"

52. Because the Declaration provides that [Ms. Sullivan] may prepay the outstanding assessment ($20,700) at present value, the actual "estimated payoff amount" cannot be equal to the "amount remaining on the assessment, including interest" because the actual "estimated payoff amount" cannot include the 8% interest accruing on the water and sewer assessment for 23 years.

6

53. The actual "estimated payoff amount" can only be determined by performing a present value calculation of the total future amount due.

54. The actual "estimated payoff amount" must be less than the "amount remaining on the assessment, including interest."

55. [Ms. Sullivan]'s purchase agreement did not contain a disclosure that included the estimated payoff amount of the water and sewer assessment as required by Md. Code Ann., Real Prop. § 14-117(a)(3)(i)(7).

(second and third alteration in original). In response, Caruso filed a renewed motion to dismiss, incorporating the same arguments as its original motion to dismiss, which were previously noted above. The circuit court held a motions hearing and subsequently dismissed the Amended Complaint for failure to state a claim upon which relief may be granted as a matter of law. Specifically, the circuit court determined that § 14-117(a)(3)(i)(7) does not mandate a specific formula to calculate the "estimated payoff amount of the assessment" and that the section does not require a present day value calculation. The court further found that Caruso's disclosures complied with § 14-117(a)(3)(i)(7). Ms. Sullivan then noted this appeal.

## QUESTIONS PRESENTED

Ms. Sullivan raises one question for our review,[3] which we rephrased and recast as two separate questions:

---

[3] Ms. Sullivan phrased her single question presented as follows:

Whether the seller of residential real property located in Prince George's County complies with RP § 14-117(a)(3)(i)(7) by disclosing that the "estimated payoff

7

1.  Does a seller of residential real property located in Prince George's County comply with Real Property § 14-117(a)(3)(i) when, in an initial sale contract, the disclosure for the "estimated payoff amount of the assessment" is equal to the disclosure for the "amount remaining on the assessment, including interest"?

2.  Did the circuit court err in granting Caruso's renewed motion to dismiss for failure to state a claim?

We hold that the circuit court erred in granting Caruso's renewed motion to dismiss for failure to state a claim. We therefore reverse the judgment of the circuit court and remand the case for further proceedings.

## STANDARD OF REVIEW

We review the grant of a motion to dismiss for failure to state a claim de novo. *Lamson v. Montgomery County*, 460 Md. 349, 360 (2018) (citing *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State Highway Admin.*, 388 Md. 500, 509 (2005)). "[W]e must determine whether the complaint, on its face, [states] a legally sufficient cause of action." *Schisler v. State*, 177 Md. App. 731, 743 (2007) (quoting *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 72 (1998)). This also applies to a motion to dismiss an amended complaint. *Schisler*, 177 Md. App. at 743.

---

amount of the [deferred private water and sewer] assessment" is equal to the "amount remaining on the assessment, including interest," in the initial sale contract when the assessment includes an interest rate of 8% and the declaration creating the assessment allows a homeowner to prepay the assessment "at present day values" in total satisfaction of the homeowner's obligation under the declaration?

(alteration in original).

A pleading must contain "such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." Md. Rule 2-303(b); *see LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 410-11 (2007) (noting that one of the main purposes of pleading is to ensure that opposing parties are apprised of the basis of the claim and the relief sought). We "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Schisler*, 177 Md. App. at 743 (quoting *Fioretti*, 351 Md. at 72). The facts we consider are limited to the four corners of the complaint and any incorporated supporting exhibits. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010) (citing *Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 475 (2004)). Bald allegations and conclusory statements are insufficient to state a claim. *RRC Ne., LLC*, 413 Md. at 644. The pleader, however, does not need to allege all the ultimate operative facts. *Kline v. Lightman*, 243 Md. 460, 478 (1966); *see also Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 770 (1986) (noting that while the complaint lacked the "desired specificity," the allegations were nonetheless "adequate").

In the present case, whether the circuit court's grant of the motion to dismiss was legally correct hinges on a question of statutory interpretation. "The interpretation of a statute is a question of law that [an appellate court] reviews de novo." *Brown v. State*, 454 Md. 546, 550 (2017) (citing *Bellard v. State*, 452 Md. 467, 480-81 (2017)). Because this case concerns purely questions of law, our standard of review throughout the entirety of this opinion is de novo.

## DISCUSSION

We will first conduct a statutory construction analysis of § 14-117(a)(3)(i). Based on that analysis, we will then determine whether the Amended Complaint stated a claim upon which relief may be granted.

### I. STATUTORY CONSTRUCTION ANALYSIS OF § 14-117(A)(3)(I).

At issue is the proper interpretation of the "estimated payoff amount of the assessment" under § 14-117(a)(3)(i). Ms. Sullivan contends that Caruso did not comply with the disclosure requirement under this statutory provision because, according to her statutory interpretation, the "estimated payoff amount of the assessment" cannot be identical to the "amount remaining on the assessment, including interest" and the "estimated payoff amount" must be accurate. Conversely, Caruso argues that it provided the proper disclosures as required by § 14-117(a)(3)(i) because the word "estimate" permits a variance and thus the disclosed payoff amount need not be precise.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." *Daughtry v. Nadel*, 248 Md. App. 594, 611-12 (2020) (quoting *Bellard*, 452 Md. at 481). Our analysis begins "with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010)). "We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant." *Daughtry*, 248 Md. App. at 612 (quoting *Peterson v. State*, 467 Md. 713, 727 (2020)). "[W]e must 'read the statute as a whole to ensure that no word, clause, sentence

10

or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Daughtry*, 248 Md. App. at 612 (quoting *Berry v. Queen*, 469 Md. 674, 687 (2020)). Our analysis is not limited to a specific statutory provision at issue; "[i]nstead, '[t]he plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute.'" *Id.* at 612 (second alteration in original).

If we conclude that the language "is unambiguous and clearly consistent with the statute's apparent purpose," we usually stop there and our analysis ends. *State v. Johnson*, 415 Md. 413, 421 (2010). Even if the language is unambiguous, "[w]hile not necessary in every instance, we often find it prudent to scrutinize the legislative history to confirm that our interpretation of the statute's plain language accords with the legislature's intent." *Daughtry*, 248 Md. App. at 613 (alteration in original) (quoting *Berry*, 469 Md. at 687-88); *see also In re S.K.*, 466 Md. 31, 50 (2019) ("[T]he modern tendency . . . is to continue the analysis of the statute beyond the plain meaning to examine 'extrinsic sources of legislative intent' in order to 'check [] our reading of a statute's plain language' through examining 'the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.'" (second alteration in original) (quoting *Brown*, 454 Md. at 551)).

If the language is ambiguous, we look to the statute's structure, relationship to other laws, general purpose, and legislative history. *Hailes v. State*, 442 Md. 488, 495-96 (2015) (citing *Gardner v. State*, 420 Md. 1, 9 (2011)). We seek to construe and reconcile related statutory provisions harmoniously, "to the extent possible consistent with the

statute's object and scope." *Gardner*, 420 Md. at 9 (quoting *Johnson*, 415 Md. at 421-22). In ascertaining legislative intent, we "may consider the consequences resulting from one meaning rather than another[] and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 513 (1987) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986)). "[T]he real legislative intention prevail[s] over the intention indicated by the literal meaning." *Kaczorowski*, 309 Md. at 516 (quoting *Potter v. Bethesda Fire Dep't, Inc.*, 309 Md. 347, 353 (1987)). Lastly, there is "a canon of statutory construction that remedial statutes are liberally construed to suppress the evil and advance the remedy." *Harrison v. John F. Pilli & Sons, Inc.*, 321 Md. 336, 341 (1990); *see also Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 620 (2010) (citing *Harrison* for the same proposition).

## A.     The Statute's Language

Section 14-117(a)(3)(i) provides eight required disclosures regarding deferred water and sewer assessments in a contract for the initial sale of residential real property in Prince George's County:

> In Prince George's County, a contract for the initial sale of residential real property for which there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure that includes:
>
> 1.     The existence of the deferred private water and sewer assessments;
>
> 2.     The amount of the annual assessment;

3.     The approximate number of payments remaining on the assessment;

4.     *The amount remaining on the assessment, including interest*;

5.     The name and address of the person or entity most recently responsible for collection of the assessment;

6.     The interest rate on the assessment;

7.     *The estimated payoff amount of the assessment*; and

8.     A statement that payoff of the assessment is allowed without prepayment penalty.

Md. Code Ann., Real Prop. § 14-117(a)(3)(i) (2015 Repl. & Supp. 2020) (emphasis added). The damages section articulates:

Violation of subsection (a)(3) of this section entitles the purchaser to:

(i)     Recover from the seller the total amount of deferred charges the purchaser will be obligated to pay following the sale;

(ii)     Recover from the seller any money actually paid by the purchaser on the deferred charge that was lost as a result of a violation of subsection (a)(3) of this section; or

(iii)     If the violation is discovered before settlement, rescind the real estate contract without penalty.

Real Prop. § 14-117(b)(2) (2015 Repl. & Supp. 2020).

For comparison purposes, § 14-117.1 "applies only to existing single-family residential real property in Prince George's County" and requires that "[a] person or entity that imposes a deferred water and sewer charge . . . include with each bill a statement that includes:"

    (1)    The amount of the annual assessment;

    (2)    The approximate number of payments remaining on the assessment;

    (3)    The amount remaining on the assessment, including interest;

    (4)    The name and address of the person or entity most recently responsible for collection of the assessment;

    (5)    The method used to compute the deferred water and sewer charge on the property;

    (6)    The interest rate on the assessment;

    (7)    The estimated payoff amount of the assessment; and

    (8)    A statement that payoff of the assessment is allowed without prepayment penalty.

Real Prop. § 14-117.1 (2015 Repl.). This provision, unlike § 14-117(a)(3)(i), specifies that "[t]he balance owed on a deferred water and sewer assessment *may be redeemed at the present value of the assessment*." *Id.* (emphasis added).

**B.    The "Estimated Payoff Amount of the Assessment" Must Reflect a Good Faith Calculation of the Payoff Amount that Would Be Due on the Date of Settlement.**

In this instance, the meaning of the phrase "estimated payoff amount" is at issue. At the outset, we observe that § 14-117 does not define the word "estimate" and does not

14

require a specific formula or calculation for the "estimated payoff amount." We will therefore look to the ordinary and popular understanding of the word "estimate" to determine its meaning. *See Blackstone*, 461 Md. at 113. To do this, we may consult a dictionary. *Chow v. State*, 393 Md. 431, 445 (2006).

To make an estimate means to "roughly calculate or judge the value, number, quantity, or extent of." *Oxford Dictionary of English* 599 (Angus Stevenson ed., 3d ed. 2010). The word "estimate" is also defined as "an approximate calculation or judgment of the value, number, quantity, or extent of something."[4] *Id.* The word "approximate" means to "estimate or calculate (a quantity) fairly accurately" or to "come close or be similar to something in quality, nature, or quantity." *Id.* at 77. "Approximate" also describes something that is "close to the actual, but not completely accurate or exact." *Id.* The parties agree, and so do we, that the word "estimate" is synonymous with the word "approximate." We determine that the ordinary, popular meaning of the "estimated payoff amount" is an estimate that is fairly accurate and close to the actual payoff amount, but it does not need to be exact.

Ms. Sullivan argues that because an "estimate" is an "approximate calculation," the "estimated payoff amount" must be accurate and "nearly correct." She further contends that a present day value calculation was required to determine the "estimated payoff amount of the assessment" under § 14-117(a)(3)(i) because the Declaration

---

[4] *The Merriam-Webster Dictionary* similarly defines "estimate" as "a rough or approximate calculation." Merriam-Webster, *The Merriam-Webster Dictionary* 244 (2016).

specifies that an "Owner may prepay the outstanding assessment at present day values in total satisfaction of Owner['s] obligations hereunder." According to Ms. Sullivan, Caruso did not perform a present day value calculation and thus did not attempt to provide an accurate "estimated payoff amount" given that the disclosed amount ($20,700) was more than double the actual payoff amount at the time of the initial sale.[5] She also contends that the two disclosures cannot be equal when there is interest on the assessment and the Declaration provides for a prepayment discount. Ms. Sullivan reasons that if a seller simply repeats the number for the "amount remaining on the assessment, including interest" for the "estimated payoff amount," then the General Assembly's requirement for a seller to disclose the "estimated payoff amount" would be superfluous.

Conversely, Caruso contends that because an "estimate" or an "approximation" is not the actual amount, a variance between the estimate and actual payoff amount is not a violation of the statute. Furthermore, it argues that nothing in § 14-117 suggests that such a variance constitutes a violation of the provision. According to Caruso, an "estimate" is an approximation or rough calculation, which precludes accuracy. Caruso notes that § 14-117(a)(3)(i) does not require or even mention a present day value calculation while § 14-117.1(c) specifically provides that "[t]he balance owed on a deferred water and sewer assessment may be redeemed at the present value of the assessment." Caruso contends that if the General Assembly intended for a present day value calculation to be used in § 14-117(a)(3)(i), it would have expressly stated as much.

---

[5] In her brief, Ms. Sullivan calculates the present day value of the assessment to be $10,080.67 at the time of settlement.

Lastly, Caruso asserts that the "estimated payoff amount" is the maximum amount that a purchaser would pay for the assessment, representing a worst-case scenario for the payor.

As Caruso correctly notes, the statute itself does not require a present day value calculation. To further aid our plain language analysis, we may look at other sections of the statute and the scheme to which § 14-117(a)(3)(i) belongs. *See Daughtry*, 248 Md. App. at 612. As noted above, § 14-117(a)(3)(i) applies to the initial sale of residential real property while § 14-117.1 applies to the billing of "a deferred water and sewer charge" for "existing single-family residential real property in Prince George's County." If the General Assembly wanted to require a present day value calculation to be used for initial sales, it could have easily provided for it in § 14-117(a)(3)(i) because § 14-117.1(c) specifically provides that the balance owed on the assessment "may be redeemed at the present value." While we conclude that § 14-117(a)(3)(i) does not require a present day value calculation, the Declaration states that an "Owner may prepay the outstanding assessment at *present day values* in total satisfaction of Owner['s] obligations hereunder[,]" so a present day value calculation may be used in this instance.[6] (emphasis added).

More importantly, it is clear that at the date of settlement, whenever that date may be, interest has not started to accrue. It is illogical for the "amount remaining on the

---

[6] Ms. Sullivan asserts that "[t]his case requires this Court to employ basic principles of both statutory interpretation and math." We disagree with this intimation. We are neither required to calculate the value of the "estimated payoff amount" nor calculate the present day value. We merely determine that a present day value formula may be used pursuant to the Declaration.

17

assessment, *including interest*" and the "estimated payoff amount of the assessment" to be the exact same amount when both are calculated at the time of settlement. In this case, the "estimated payoff amount" at the time of settlement cannot be equal to the "amount remaining on the assessment, including interest," which is the amount paid by the purchaser in annual payments of $900 with an 8% interest rate over a 23-year period for a total of $20,700. At the time of the initial sale, the "amount remaining on the assessment, including interest" is the maximum amount a purchaser would pay on the water and sewer assessment at the end of the amortization period, while the "estimated payoff amount of the assessment" is the lower amount to pay off the assessment in full at the time of settlement. The plain language of the statute indicates that the purpose of the disclosures is to ensure purchasers are aware of the option to prepay the assessment at a lower amount.[7] By requiring sellers to disclose both amounts, and because the "estimated payoff amount" is naturally a lower value than the "amount remaining on the assessment, including interest," the legislature intended to notify purchasers of the less expensive option of prepaying the assessment. If the General Assembly intended it to be acceptable for a developer to provide the same amount for the disclosures required by §

---

[7] To be sure, Addendum Number 11 to the Purchase Agreement states that "[t]here is a right of prepayment for the Water and Sewer Charges, and the prepayment figure may be ascertained by contacting the Company or by reviewing the Water and Sewer Declaration." The purchaser, thereby, is informed that she has the right to prepay the assessment. Indeed, the eighth disclosure of § 14-117(a)(3)(i) states that the "payoff amount of the assessment is allowed without prepayment penalty." Pursuant to § 14-117(a)(3)(i)(7), however, the "estimated payoff amount of the assessment" must be included in the disclosure even though the purchaser is told in more than one document that she may payoff the assessment early.

18

14-117(a)(3)(i)(4) and (7), then it would be "surplusage, superfluous, meaningless or nugatory" to require two different disclosures. *Daughtry*, 248 Md. App. at 612 (quoting *Berry*, 469 Md. at 687).

If we adopt Caruso's view, that the "estimated payoff amount" is simply the maximum amount a purchaser would pay for the assessment, that would not comport with § 14-117(a)(3)(i)(7) and render it superfluous. By specifying two different disclosures, the General Assembly intended for sellers to inform purchasers that they have the option of saving money by prepaying the assessment and an estimated amount of those savings.

Additionally, even if the seller provided a number for the "estimated payoff amount" that was not equal to the "amount remaining on the assessment, including interest," these figures may still not notify the purchaser of the option to save money by prepaying the assessment. For example, if the seller inserted $20,699 for the "estimated payoff amount" and $20,700 for the "amount remaining on the assessment, including interest," a purchaser would not be sufficiently notified that she would in fact save money by prepaying the assessment. We recognize that mistakes in calculations may be made or rounding errors may occur, but to satisfy the disclosure requirement of § 14-117(a)(3)(i)(7), we hold that the estimate must reflect a good faith calculation of the advance payoff amount that would be due on the settlement date.[8] It is unambiguous that

[8] *See Blondell v. Littlepage*, 413 Md. 96, 113-14 (2010) (citing *Clancy v. King*, 405 Md. 541, 565-66 (2008) (noting that in every contract there is an implied duty of good faith and fair dealing)); *Port E. Transfer, Inc. v. Liberty Mut. Ins. Co.*, 330 Md. 376,

the General Assembly intended that the disclosure for the "estimated payoff amount" be made in good faith and fairly accurate to notify the purchaser that she has the option to save money by prepaying the assessment in full at the time of settlement. We next turn to the statute's legislative history to confirm our interpretation.

### C. The Legislative History of § 14-117(a)(3)(i) Supports Our Plain Language Interpretation.

Although we are satisfied that we may stop at our plain language analysis, we will exercise our discretion and look to the legislative history of § 14-117(a)(3)(i) to confirm our interpretation of the statutory language. The legislative bill file for House Bill 1043 of the 2014 Session, which became § 14-117 and § 14-117.1, contains little that sheds light on the meaning of "estimated payoff amount." Consistent with the statute itself, the Floor Reports of the House Environmental Matters Committee and the Senate Education, Health, and Environmental Affairs Committee state that this bill "requires a contract for the initial sale of residential real property in Prince George's County to include specified disclosures relating to deferred water and sewer assessments." H. Env't Matters Comm., Floor Report on House Bill 1043, 2014 Leg., 434th Sess. (Md. 2014); S. Educ., Health, &

---

385 (1993) ("Even when the parties are silent on the issue, the law will impose an implied promise of good faith."); *Julian v. Christopher*, 320 Md. 1, 9 (1990) (In a contract, "there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others." (quoting *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534 (1964))).

Env't Affs. Comm., Floor Report on House Bill 1043, 2014 Leg., 434th Sess. (Md. 2014).[9]

The Fiscal and Policy Note accompanying the legislation provides the same and specifies that the disclosure statement in sales contracts must include "the amount remaining on the assessment, including interest" and "the estimated payoff amount of the assessment."  Dep't of Legis. Servs., Revised Fiscal and Policy Note on House Bill 1043, 2014 Leg., 434th Sess., at 1-2 (Md. 2014).  The House Floor Report additionally mentions that an amendment to the bill "ma[de] minor changes to the specified disclosures" in an initial sales contract but does not indicate the reasoning behind such an amendment.  H. Env't Matters Comm., Floor Report on House Bill 1043, 2014 Leg., 434th Sess. (Md. 2014).  Looking to the drafting history, § 14-117(a)(3)(i)(7) originally began as "[t]he payoff amount of the assessment" and an amendment to the bill added the word "estimated" to the beginning of that phrase.  H. Env't Matters Comm., Amendments to House Bill 1043 (First Reading File Bill), 2014 Leg., 434th Sess. (Md. 2014).  The statutory language referencing the "amount remaining on the assessment, including interest" remained unchanged.  House Bill 1043's bill file and the Fiscal and Policy Note, however, do not indicate what was meant by adding the word "estimated" or its meaning.

---

[9] "In analyzing a statute, Floor Reports often serve as 'key legislative history documents.'" *Daughtry*, 248 Md. App. at 621 n.19 (quoting *Hayden v. Maryland Dep't of Nat. Res.*, 242 Md. App. 505, 530 (2019)).

The circumstances surrounding the adoption of § 14-117(a)(3)(i) are informative regarding the legislature's purpose.  In 2012, the General Assembly established the Task Force to Study Rates and Charges in the Washington Suburban Sanitary District in response to growing concerns from policymakers regarding deferred water and sewer connection fees assessed on new homeowners by private developers.  *See* Washington Suburban Sanitary District Transparency and Rate Relief Act of 2012, 2012 Md. Laws ch. 685.  The Task Force Report is indicative of the legislature's purpose because the Fiscal and Policy Note and the House Floor Report rely on and summarize the Task Force's key findings.  *See* H. Env't Matters Comm., Floor Report on House Bill 1043, 2014 Leg., 434th Sess. (Md. 2014); Dep't of Legis. Servs., Revised Fiscal and Policy Note on House Bill 1043, 2014 Leg., 434th Sess., at 3-4 (Md. 2014); *see also* S. Educ., Health, & Env't Affs. Comm., Floor Report on House Bill 1043, 2014 Leg., 434th Sess. (Md. 2014) (summarizing and containing information found in, but not directly citing, the Task Force Report).

Specifically, the General Assembly instructed the Task Force to make recommendations regarding (1) "standards for developers to follow when charging property owners for the cost of constructing water and sewer facilities and connecting property to the water and sewer facilities" and (2) "improving the transparency" of developers' practice of charging property owners for such costs.  2012 Md. Laws ch. 685, § 2(g)(5); *see also* Task Force to Study Rates & Charges in the Wash. Suburban Sanitary

22

Dist., *Report* 3 (2013) [hereinafter *Task Force Report*].[10]  The Task Force Report, issued

in December 2013, sheds light on the transparency issues regarding deferred water and

sewer assessments charged by private developers.  *See Task Force Report*, *supra*, at 5.

According to the Task Force Report, the General Assembly established the

Washington Suburban Sanitary Commission ("WSSC") in 1918 to address concerns that

"waste from both Montgomery and Prince George's counties was contaminating streams

within the [District of Columbia]." *Id.* at 1.  The WSSC was responsible for the

construction of new water and sewer lines in its territory and then would "impose an

annual front foot benefit charge on owners of new residential, commercial, or industrial

development to recover the costs" of construction. *Id.* at 21.  After the enactment of

legislation in 1998,[11] however, the WSSC no longer imposes or collects front foot benefit

charges. *Id.*  Instead, private developers now impose and collect these charges. *Id.*

To gather information and obtain public input on deferred water and sewer fees

charged by private developers, the Task Force held a public hearing. *Id.* at 3.  The Task

Force summarized the key concerns raised by homeowners, including, but not limited to:

- Disclosure statements not routinely provided to potential
  homeowners prior to settlement

- Homeowners unaware of deferred water and sewer
  charges prior to purchasing home

---

[10] The Task Force was also instructed to compare rate caps on water and sewer rate increases charged by the Washington Suburban Sanitary Commission with rates charged by other states, ascertain the effect of such a rate cap or prepayment discount, and study the process developers use for charging the construction and connection to water and sewer facilities.  2012 Md. Laws ch. 685, § 2(g)(1)–(4).

[11] *See* 1998 Md. Laws ch. 516.

- Homeowners may not have purchased home if they knew about the deferred water and sewer charges

   . . . .

- *Accountability needs to be improved*

- Limited oversight by WSSC on how the private assessments are calculated and set by private developers

- Measures need to be implemented to govern the entities imposing the charges

- *Existing process is ripe for potential fraud and abuse by private developers*

   . . . .

- Provide additional options for paying the front foot benefit charge or deferred water and sewer charges

- *Homeowners do not have the option of prepaying deferred water or sewer charge* or including the amount in the homeowner's mortgage

   . . . .

- Increase public awareness on the reasons for imposing the front foot benefit charge and the deferred water and sewer charges by private developers

- Inform the public on the methodology for calculating the deferred water and sewer charges

*Id.* at 4 (emphasis added). One of the "predomina[nt] issues expressed at the public hearing centered on the lack of disclosure of the deferred water and sewer charges at the time of purchasing the home." *Id.* at 3.

24

Based on the public hearing and other work sessions, the Task Force observed that while private developers are generally responsible for constructing and financing water and sewer pipelines within the WSSC service territory, the charges for the costs of construction are "imposed and collected by the private developers with no oversight by the WSSC or county government." *Id.* at 20. The Task Force noted that "[w]hile customers are often given the option to pay the assessment in full up front, in practice few do." *Id.* at 21. Rather, customers usually receive an annual bill for the deferred assessment. *Id.* But at the hearing some homeowners expressed a desire to prepay the entire deferred assessment in a lump sum and others wished for the assessment to be included in the initial sale price of the home. *Id.* at 23.

The Task Force issued 13 recommendations based on its findings, two of which are relevant:

> **Recommendation 7:** Require a contract for the sale of new residential real property in Prince George's County to contain a disclosure statement regarding the estimated cost of any deferred water and sewer charges for which the purchaser may become liable. The disclosure statement must include the amount of the annual assessment; the number of years of the assessment; *the amount of the full assessment, including interest*; the name and address of the person/entity responsible for collection of the assessment; the interest rate on the assessment; *the payoff amount of the assessment*; and a statement that payoff of the assessment is allowed without penalty.
>
> These recommendations should be considered for future action on resale property.
>
> **Recommendation 8:** If the information for the sale contract of residential real property is not included, the purchaser is entitled to recover from the seller the total amount of deferred

charges the purchaser will be obligated to pay following the sale and any money actually paid by the purchaser on the deferred charge that was lost as a result of the violation. If the violation is discovered before settlement, the buyer may rescind the real estate contract without penalty.

*Id.* at vii-viii, 24 (emphasis added). Recommendations 7 and 8 clearly reflect and address homeowners' concerns about the lack of disclosure and transparency regarding deferred water and sewer assessments charged by private developers. In response to the Task Force Report and recommendations, the General Assembly enacted House Bill 1043,[12] which codified Recommendations 7 and 8 almost verbatim as § 14-117(a)(3)(i) and § 14-117(b)(2), respectively.[13]

Because the Court of Appeals determined that § 14-117 is "clearly remedial," we liberally construe the statute to "suppress the evil and advance the remedy."[14] *Harrison v. John F. Pilli & Sons, Inc.*, 321 Md. 336, 341 (1990). In light of the Task Force's stated goal to "improv[e] the transparency" of how private developers charge and disclose

---

[12] The General Assembly adopted six of the Task Force's 13 recommendations. *See* Dep't of Legis. Servs., Revised Fiscal and Policy Note on House Bill 1043, 2014 Leg., 434th Sess., at 3 (Md. 2014).

[13] The General Assembly clarified that § 14-117(a)(3)(i) only applies to the "initial" sale of residential real property and inserted the words "estimated" in front of "payoff amount" (Disclosure 7) and "prepayment" in front of "penalty" (Disclosure 8). *Compare* Real Prop. § 14-117(a)(3)(i) *with Task Force Report*, *supra*, at vii-viii. The remedies provided by Recommendation 8 remained the same in § 14-117(b)(2). *Compare* Real Prop. § 14-117(b)(2) *with Task Force Report*, *supra*, at viii.

[14] At the time *Harrison v. John F. Pilli & Sons, Inc.*, 321 Md. 336 (1990) was decided, the disclosure provisions for deferred water and sewer charges were codified as § 14-118, which was subsequently transferred to § 14-117 by Chapter 756 of the 1989 Laws of Maryland. 321 Md. at 338 n.1. The disclosure provisions at issue in this case went into effect on October 1, 2014. 2014 Md. Laws ch. 441.

deferred water and sewer charges and the penalties set forth for violating subsection (a)(3), it is clear that the General Assembly passed House Bill 1043 to provide purchasers with detailed information about water and sewer fees at the time of the initial sale and to provide a remedy when developers violate the disclosure requirements. 2012 Md. Laws ch. 685, § 2(g)(5). Thus, the disclosures must transparently alert the purchaser that the deferred water and sewer charges can be prepaid in full at the time of settlement. *See Neal v. Fisher*, 312 Md. 685, 694 (1988) (stating that "court[s] should not permit 'a narrow or grudging process of construction to exemplify and perpetuate the very evils to be remedied'" (quoting *Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 350-51 (1937))).

Ms. Sullivan asserts that the goal of the General Assembly—to afford purchasers the opportunity to save thousands of dollars in interest by prepaying the assessment in full—cannot be carried out if the seller provides an inaccurate "estimated payoff amount," leading the purchaser to erroneously believe that there is no financial benefit to prepaying. Conversely, Caruso argues that its disclosure statements effectuated the remedial purpose of the statute because the Purchase Agreement provided the disclosures twice in Addendum Number 1 and Addendum Number 11.

We agree with Ms. Sullivan. As discussed above, the legislative history indicates that the General Assembly, by adopting and codifying the Task Force's recommendations, wanted purchasers in Prince George's County to have the opportunity

27

to save money by prepaying the assessment in full and avoiding interest payments.[15] *See*

*Blackstone v. Sharma*, 461 Md. 87, 114 (2018) (We must "consider the consequences

resulting from one meaning rather than another, and adopt that construction which avoids

an illogical or unreasonable result, or one which is inconsistent with common sense."

(quoting *Spangler v. McQuitty*, 449 Md. 33, 50 (2016))).

In sum, the historical context and legislative history of § 14-117(a)(3)(i) reveal

that the General Assembly intended the statutory disclosures to improve transparency and

provide accurate information to purchasers.  This accords with our plain language

interpretation.

## II.    THE AMENDED COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

With the above statutory interpretation in mind, we now return to the Amended

Complaint.  In analyzing this pleading, we presume the truth of the alleged facts and

draw reasonable inferences derived from those facts.  *See Schisler v. State*, 177 Md. App.

---

[15] The Task Force Report additionally provided examples of how purchasers within the WSSC service area and other counties in Maryland can save significant amounts of money by prepaying their deferred assessments in full.  *See Task Force Report*, *supra*, at 18 ("By paying off the charge early, the property owner [within the WSSC area] avoids future annual interest charges relating to the front foot benefit assessment."); *id.* at 19 ("As with WSSC, a property owner [in Anne Arundel County] has the option to pay off their front foot benefit assessment early, and by doing so the property owner avoids the cost of interest that would otherwise be applied to annual payments.  Given the current interest rate of approximately 3.45%, a property owner that pays the front foot benefit assessment in full in the first year can save as much as 62% compared to making each annual payment over 30 years."); *id.* at 31-32 (providing an example of how a property owner within the WSSC area can save over $6,300 by prepaying the assessment as opposed to annual payments totaling $16,110.61 over 21 years).

731, 743 (2007). The Amended Complaint alleged that the Purchase Agreement "disclosed" that the "amount remaining on the assessment, including interest" and the "estimated payoff amount of the assessment" are both $20,700 and in doing so, Caruso "fail[ed] to *accurately* disclose" the estimated payoff amount. Instead of asserting there was no disclosure, Ms. Sullivan alleged that the disclosure provided was not in compliance with § 14-117(a)(3)(i). She explained that because the Declaration specifies that a present day value may be used, "[t]he actual 'estimated payoff amount' can only be determined by performing a present value calculation." Ms. Sullivan asserted that because a present value may be used, "the actual 'estimated payoff amount' cannot be equal to the 'amount remaining on the assessment, including interest' because the actual 'estimated payoff amount' cannot include the 8% interest accruing on the water and sewer assessment for 23 years." In other words, Ms. Sullivan alleged that if one of the disclosures includes interest but the other does not, then the two disclosures could not be the same value. Consequently, the "estimated payoff amount" must be less than the "amount remaining on the assessment, including interest." According to Ms. Sullivan, Caruso did not provide an "accurate" disclosure of the "estimated payoff amount" "as required" by § 14-117(a)(3)(i)(7).

While the Amended Complaint is not a model of clarity, the allegations are adequate to state a claim upon which relief may be granted. It is sufficient to alert Caruso of the basis of Ms. Sullivan's claims and requested relief, namely that the disclosures were not in compliance with § 14-117(a)(3)(i). *See* Md. Rule 2-303(b); *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 410-11 (2007).

29

## CONCLUSION

We hold that under Real Property § 14-117(a)(3)(i), the disclosure for the "estimated payoff amount of the assessment" must reflect a good faith calculation that notifies the purchaser that she has the option to save money by prepaying the assessment in full at the time of settlement. Based on this interpretation, we determine that Ms. Sullivan's Amended Complaint sufficiently stated a claim upon which relief may be granted. We therefore hold that the circuit court erred in granting Caruso's renewed motion to dismiss.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**